UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ARMANDO ARCE,

    Plaintiff,

v.                                       17-CV-696
                                         DECISION AND ORDER
JUDGE DAVID L. TURNBULL, *et al.*,

    Defendants.

---

In July 2017, the pro se plaintiff, Armando Arce, filed a complaint asserting claims under 42 U.S.C. § 1983. Docket Item 1 at 3-4.[1] Arce's claims stem from various proceedings in the Chautauqua Family Court involving the custody of his children.

On May 7, 2018, Arce filed an emergency motion for a temporary restraining order and/or preliminary injunction. Docket Item 8. On October 8, 2018, Chautauqua County moved to dismiss the complaint. Docket Item 18. The next day, the other defendants ("State Defendants") followed suit. Docket Item 20. On October 23, 2018, Arce responded to Chautauqua County's motion, Docket Item 21; and on October 30, 2018, Chautauqua County replied, Docket Item 22. On November 20, 2018, Arce responded to the State Defendants' motion. Docket Item 25.

On December 17, 2018, Arce moved for sanctions, Docket Item 27; and on December 18, 2018, he moved to strike the defendants' affirmative defenses, Docket Items 29, 30. On January 11, 2019, the defendants moved to stay Arce from making

---

[1] Arce amended this complaint in February 2018. Docket Item 6.

any additional filings, Docket Item 32; but on January 14, 2019, Arce moved for judgment on the pleadings, Docket Item 33.

For the reasons that follow, the defendants' motions to dismiss are granted and Arce's motion for sanctions is denied. This Court need not address the various other pending motions.[2]

## **BACKGROUND**

A liberal reading of the complaint tells the following story.

On November 25, 2009, Arce and his ex-wife agreed to an order of custody and visitation in Chautauqua County Family Court. Docket Item 23 at 3. The order granted Arce fifty percent joint physical placement and fifty percent custody of his son, Armando Arce, Jr. *Id.* Arce and his ex-wife also agreed to a settlement of their divorce proceeding in Chautauqua County Family Court. *Id.* One clause of the settlement agreement provided that neither parent could relocate their children outside Chautauqua County without the other parent's written approval or a court order. *Id.*

In November 2014, Arce's ex-wife moved their son out of New York State without Arce's knowledge or approval and without a court order. Docket Item 8-1 at 1. Arce then sued in Chautauqua County Family Court. *See* Docket Item 23 at 3. Magistrate David L. Turnbull presided over Arce's case in 2014 and permitted Arce's ex-wife to

---

[2] Without leave of the court, Arce filed several amended complaints, the last—the fourth amended complaint—on November 5, 2018. Docket Item 23. On December 4, 2018, Chautauqua County submitted a "memorandum of law in opposition to plaintiff's attempt to amend his complaint." Docket Item 26. Even if leave of the Court were not required for Arce to submit the fourth amended complaint, the complaint still fails to state a claim, and this Court therefore need not address the County's arguments in its memorandum, Docket Item 26.

2

move their son outside New York. *Id.* In doing so, Magistrate Turnbull denied Arce due process of law, "access to the courts[,] and equal protections." *Id.* And he did that under a "long-standing policy" with respect to New York Family Court Act § 439(c). *Id.*

Magistrate Michael K. Bobseine presided over Arce's case after Magistrate Turnbull recused himself. *Id.* Like Magistrate Turnbull, Magistrate Bobseine used Chautauqua County Family Court's "long-standing policy" to deny Arce "equal protections" and due process. *Id.* Magistrate Bobseine also "concluded matters outside his subject matter jurisdiction." *Id.*

The Honorable Michael Sullivan presides over Chautauqua Family Court and made several decisions regarding Arce's appeal. *Id.* at 3-4. Judge Sullivan reviews support magistrate decisions to ensure that they are within their subject matter jurisdiction. *Id.* at 3. Judge Sullivan also enforced the "long-standing policy" which ignored Arce's "equal protections" and due process. *Id.* at 4.

The Honorable Michael F. Griffith is the supervisor of the Family Courts for the Eighth Judicial District of New York. *Id.* Chautauqua County Family Court enforces its "long-standing policy" at Judge Griffith's direction. *Id.* Further, Judge Griffith affirmed the magistrates' decisions to deny Arce's requests. Docket Item 8-1 at 4. Therefore, Judge Griffith has interfered with Arce's relationship with his son. Docket Item 23 at 4.

The Eighth Judicial District (the "District") is where Arce's child custody case was venued. *Id.* The District is responsible for the "supervision, training, and culture of all counties" within the District. *Id.* Therefore, with the blessing of the District, Chautauqua County Family Court enforced the "long-standing policy" that ignored Arce's "equal protections" and due process. *Id.* The District allowed the family court to ignore the

settlement and therefore substantially interfered with Arce's relationship with his son. *Id.*

Chautauqua County defers to its family court for all family court matters. *Id.* For that reason, Chautauqua County conspired to deny Arce his right to enforce the settlement and has fostered the discriminatory practices in Chautauqua County Family Court. *Id.* So Chautauqua County also has "substantially interfered" with Arce's relationship with his son. *Id.*

Arce sued Chautauqua County, Chautauqua County Family Court, the Eighth Judicial District, Turnbull, Bobseine, Sullivan, and Griffith under 42 U.S.C. § 1983. *Id.* at 2. He alleges that the defendants "intentionally, maliciously, and tortuously interfered with [his] relationship with [his] son by denying [him] equal protections under law for due process." *Id.* at 4. The "long-standing policy" created a barrier to the court and "erroneously grants the illusion" of subject matter jurisdiction. *Id.* Arce asks this Court to grant a judgment in his favor that the defendants deprived him of his natural right to raise his son, to grant injunctive relief in his favor, and to award compensatory and punitive damages. *Id.* at 5.

## DISCUSSION

The defendants have moved to dismiss the complaint. Docket Items 18, 20. Arce has moved for sanctions. Docket Item 27. The Court addresses each in turn.

### I. MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Geffner*

4

v. Coca-Cola Comp., 928 F.3d 198, 199 (2d Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible when the plaintiff pleads factual conduct that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Hu v. City of N.Y., 927 F.3d 81, 88 (2d Cir. 2019) (quoting Progressive Credit Union v. City of N.Y., 889 F.3d 40, 48 (2d Cir. 2018)).

### A. Judicial Immunity

The State Defendants argue that Arce's claims against defendants Turnbull, Bobseine, Griffith, and Sullivan must be dismissed because those defendants are immune from suit. Docket Item 20-1 at 13-18. "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). Judicial immunity is not simply immunity from damages, however; it is immunity from suit altogether. Mireles v. Waco, 502 U.S. 9, 11 (1991) (internal citations omitted). This is to ensure "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. 335, 347 (1871). Judicial immunity therefore does not give way even to allegations of bad faith or malice. Mireles, 502 U.S. at 11.

Judicial "immunity is overcome in only two sets of circumstances." Id. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Id. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 12.

5

### 1. Judicial Actions

In determining whether a judge's actions are "judicial," the Second Circuit has taken a "functional approach." *Bliven*, 579 F.3d at 209. The relevant factors include the nature of the judge's action, whether the action is ordinarily performed by a judge, whether the parties expect the judge to take such action, and whether the parties dealt with the judge in his judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven*, 579 F.3d at 210.

#### a. *Magistrate David L. Turnbull*

Magistrate Turnbull presided over Arce's case in Chautauqua Family Court. Docket Item 23 at 3. As established in *Bliven*, any act "arising out of, or related to" a case before a judge is judicial in nature. 579 F.3d at 210. As a family court judge, Magistrate Turnbull acted in his judicial capacity when he presided over Arce's case. He is therefore immune from suit. *Bliven*, 579 F.3d at 210.

#### b. *Magistrate Michael K. Bobseine*

After Magistrate Turnball was recused, Magistrate Bobseine presided over Arce's case and Arce's "attempts to [obtain] redress." Docket Item 23 at 3; Docket Item 8-1 at 3. Thus, Magistrate Bobseine also acted in his judicial capacity when he did the things alleged in the complaint and is likewise immune from suit. *Bliven*, 579 F.3d at 210.

#### c. *The Honorable Michael Sullivan*

Judge Sullivan also presided over Arce's child custody lawsuit. Docket Item 23 at 3-4. Specifically, he affirmed Magistrate Bobseine's decision to deny Arce's request. *Id.*; Docket Item 8-1 at 4. Judge Sullivan's decision was made in his capacity as a family court judge, and he also is immune from suit. *Bliven*, 579 F.3d at 210.

### d. The Honorable Michael F. Griffith

Judge Griffith also presided over Arce's child custody lawsuit. Docket Item 8-1 at 4. Specifically, Judge Griffith affirmed Magistrate Bobseine's decision to deny Arce's requests. *Id.* Judge Griffith did so in his judicial capacity as a family court judge. Therefore, Judge Griffith is also immune from suit. *Bliven*, 579 F.3d at 210.

### 2. Actions Taken in the Complete Absence of All Jurisdiction

Arce argues that at least some of the family court judges are not immune from suit because they "only had subject matter jurisdiction for matters concerning child support and had a clear absence of all jurisdiction for matters pertaining to visitation and custody of [his] son." Docket Item 21 at 14. "[B]ecause [those judges] lacked subject matter jurisdiction," Arce argues, they "could not have allowed any deviation from [Arce's] already established Stipulation of Settlement MM-2007-103 or [his] Order of Custody/Visitation V-04134-02/09E." *Id*.

"[T]he scope of a judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S. at 356. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id*. at 356-56 (quoting *Bradley*, 80 U.S. at 351). The Supreme Court has

> illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

7

*Id.* at 357 n.7 (citing *Bradley*, 80 U.S. at 352).

"Because scrutiny of a judge's state of a mind would hinder the adjudicatory process in the very manner that the judicial immunity doctrine is designed to prevent, a judge will be denied immunity only where it appears, first, that the judge acted in the clear absence of jurisdiction, and second, that the judge must have known that he or she was acting in the clear absence of jurisdiction." *Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir. 1988).

In light of those standards, Arce's complaint does not plausibly allege facts that permit the court to draw the reasonable inference that any of the judicial defendants acted in the clear absence of all jurisdiction. In fact, the various iterations of the complaint actually allege that the family court had jurisdiction over the precise issue about which Arce complains and that the judicial defendants acted as judges or judicial supervisors in connection with those issues. *See* Docket Item 14 (third amended complaint) at 2-4; *see also* Docket Item 23 (fourth amended complaint) at 2-4. Therefore, Arce's claims against the judicial defendants—Turnball, Bobsein, Sullivan, and Griffith—are dismissed.

### B.    Eleventh Amendment Immunity

The State Defendants argue that the Eleventh Amendment bars Arce's claims against the Eighth Judicial District and the Chautauqua County Family Court. Docket Item 20-1 at 9-10. States are immune from suit in federal court. U.S. Const. amend. XI. This immunity extends beyond the states themselves to state agents and instrumentalities that are "arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). Therefore, individuals cannot sue a

state, its agencies, or its officials without the state's consent or an express statutory waiver. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

New York has not consented to being sued in federal court, and there are no statutes upon which Arce relies that provide an express statutory waiver.[3] Furthermore, the New York State Unified Court System, which includes the Eighth Judicial District, is "unquestionably an arm of the State, . . . and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (internal citations omitted). The same holds true for the Chautauqua County Family Court. Notwithstanding its name, the family court "is a part of the New York State Unified Court system and is, therefore, also protected by the State's sovereign immunity from suit in federal court." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010); *see also* N.Y. Family Court Act § 113 ("The family court of the state of New York is established in each county of the state as part of the unified court system for the

---

[3] Arce argues that New York State courts indeed have waived their sovereign immunity "through their receipt of federal funds under Title IV-D of the Social Security Act, 42 U.S.C. § 651." Docket Item 21 at 20. "When providing funds from the federal purse, Congress may require as a condition of accepting those funds that a state agree to waive its sovereign immunity from suit in federal court." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001). "[I]f Congress desires to condition the States' receipt of federal funds, it 'must do so unambiguously, enabling the States to exercise their choice knowingly, cognizant of the consequences of their participation.'" *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (quoting *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). But nothing about § 651 has anything to do with waiving sovereign immunity. And Arce cites nothing that suggests otherwise.

state."). Therefore, Arce's claims against the Eighth Judicial District and the Chautauqua County Family Court are dismissed.[4]

### C. Chautauqua County

The personal involvement of a defendant is an essential element of a § 1983 claim. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). So a plaintiff must allege a "tangible connection" between the plaintiff's injuries and the actions of a defendant to state a viable claim under § 1983. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Moreover, there is no respondeat superior liability under § 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). So municipal liability must be based on constitutional deprivations caused by an officially promulgated, or *de facto*, governmental custom or policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986); *see also Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978). Thus, a municipality will be liable for a § 1983 violation only where the municipality itself was "the 'moving force' behind the plaintiff's deprivation of federal rights." *See Bd. of the Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 400 (1997). In other words, "a municipality cannot be held liable [under § 1983] *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691 (emphasis in original).

---

[4] Under "the limited exception of *Ex parte Young*" to the state's sovereign immunity, that immunity does "not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them 'immunity from responsibility to the supreme authority of the United States.'" *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. 123, 160 (1908)). But in this case, Arce sues no state officials except judges who, for other reasons described earlier, have immunity from suit.

Given the fact that the Chautauqua County Family Court is "part of the unified court system for the state," N.Y. Family Court Act § 113, neither the family court nor its employees are agents of Chautauqua County. The two entities have no relationship other than occupying the same jurisdictional territory. Yet Arce's claim against Chautauqua County is premised on the county's non-existent control over the court. *See* Docket Item 23 at 4 ("Chautauqua County has fostered the discriminatory practices concluded in Chautauqua County Family Court, and has substantially interfered with my Father-Child Relationship.").

Arce also alleges that the county "through either their [sic] own policy makers created a policy or custom or allowed the continuance of the policy . . . that denies equal protections under the law for due process." *Id.* But notwithstanding his four amended complaints, Arce fails to plead any facts—other than those involving the family court proceedings in which Arce's ex-wife was granted permission to take his son out of state—supporting his conclusory allegations regarding an unspecified "policy or custom." Indeed, in his submissions, Arce elaborates on the "long-standing policy" that he complains of: "the use of Support Magistrate[s]" for "screen[ing] or hear[ing] any part of visitation or custodial matters." Docket Item 21 at 16. Again, Arce's issue is with the court, not the county. Arce therefore fails to state a plausible claim that Chautauqua County is responsible for any of his claims, and his claim against the county is dismissed.

## II. MOTION FOR SANCTIONS

On December 17, 2018, Arce moved for sanctions. Docket Item 27. Arce argues that Chautauqua County's opposition to his filing a fourth amended complaint

was designed only to harass him.  Docket Item 28 at 3-4.  He also argues that the defendants' motions to dismiss are an attempt "to deprive the court of jurisdiction by acts of fraud."  *Id.* at 6.

"Sanctions should be sparingly imposed, . . . and care should be taken to avoid chilling creativity or stifling enthusiasm."  *Guzzello v. Venteau*, 789 F. Supp. 112, 118 (E.D.N.Y. 1992).  Here, no defendant has violated Rule 11 or engaged in any other misconduct.  Arce's motion for sanctions is denied.

## **CONCLUSION**

For the foregoing reasons, the defendants' motions to dismiss, Docket Items 18 and 20, are granted.  Arce's motion for sanctions, Docket Item 27, is denied.  The defendants' motion to stay, Docket Item 32, Arce's motion for judgment on the pleadings, Docket Item 33, Arce's motions to strike the defendants' affirmative defenses, Docket Items 29 and 30, and Arce's motion for injunctive relief, Docket Item 8, are denied as moot.  The Clerk of Court shall close the file.

SO ORDERED.

Dated:    September 17, 2019
          Buffalo, New York


                                         *s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE